INNIS, SPEIDEN & Co., H. P. LAMBERT Co. (Inc.) *v.* UNITED STATES (No. 3375)[1]

United States Court of Customs and Patent Appeals, April 3, 1931

*Curie, Lane & Wallace* (*William Young* of counsel) for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*Philip Stein,* special attorney, of counsel), for the United States.

---

[1] T. D. 44789.

1

[Oral argument February 5, 1931, by Mr. Young and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the importers in a reappraisement case involving the question of the proper American selling price, as defined in section 402 (f) of the Tariff Act of 1922, of sodium silicofluoride, imported from Holland, France, and Belgium during a period from September, 1928, to April, 1929. Since the merchandise was the subject of a presidential proclamation issued under section 315 (b) of the Tariff Act of 1922, it is conceded that the American selling price, as defined by section 402 (f) of said act, is the proper basis for determining the dutiable value of the merchandise.

Importers made 33 entries of the merchandise. Appeals from the appraisement on these entries were tried before Justice Brown sitting in reappraisement. Appeal was taken from the decision of Justice Brown to the appellate division, and in this appeal only 6 of the 33 entries were considered, and these entries are all that are included in the appeal to this court and are as follows:

Reappraisement 88526–A (entry 762281).
Reappraisement 90691–A (entry 892179).
Reappraisement 92342–A (entry 879727).
Reappraisement 88195–A (entry 4634).
Reappraisement 90198–A (entry 10516).
Reappraisement 91575–A (entry 18790).

The merchandise was entered in reappraisement 88195–A at 4¼ cents per pound and was appraised at an American selling price of 5 cents per pound. In reappraisements 88526-A and 90198-A the merchandise was entered at an American selling price of 5 cents per pound in order to meet advances made by the appraiser in a similar case, reappraisement 88195–A, and it was appraised at the entered value. In reappraisements 90691-A and 91575-A the merchandise was entered at an American selling price of 5¼ cents per pound in order to meet advances made by the appraiser in similar cases, reappraisements 88195-A and 89412-A (entry 855765) (the latter case being one of the original 33 entries, which was not before the appellate division), and was appraised at the entered value. In reappraisement 92342-A the merchandise was entered at an American selling price of 5¼ cents per pound in order to meet advances made by the appraiser in a similar case, reappraisement 89412-A, and was appraised at the entered value. Upon appeal to the single appraising justice reappraisement 89412-A was included in the schedule, and the merchandise was reappraised by Justice Brown, at 4 cents per pound. The record before us fails to show any appeal to the appellate division from this reappraisement.

On appeal to reappraisement by the importer the single reappraising justice found the American selling price to be 4 cents per pound, and upon appeal a majority of the United States Customs Court found that the merchandise was dutiable at an American selling price of 5 cents per pound. Justice Cline dissented and concluded that the merchandise should be dutiable as found by the single reappraising justice.

It will be observed that all of the entries except the entry in reappraisement 88195-A were duress entries and were made in conformity with the provisions of section 489 of the Tariff Act of 1922 and that the merchandise in the duress entries was appraised at the entered value. It is conceded in this case that the goods in the duress entries are of the same value as the goods in the test cases, and that the duress cases are in every respect similar to the test cases.

In so-called duress-entry cases where the goods are of the same value as in the test case mentioned in the certificate, and the duress case is similar to the test case, the appraisement of the goods by the appraiser should be held in abeyance until after the final appraisement in the test case, and any appraisement made prior to this time is premature and void. No decision by the single reappraising justice could have made valid the appraiser's action in the duress entries at bar, and he should not have reappraised the merchandise. If the appraiser had no right to appraise the merchandise certainly no reappraising justice had the right to reappraise the same. He should have dismissed the appeals. For the same reason, the appeals in the duress cases at bar should be and are dismissed. *United States* v. *The Fuchs & Lang Manufacturing Co.*, 18 C. C. P. A. (Customs) 460, T. D. 44760; *Beaver Products (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 434, T. D. 43878. Appeals in reappraisements 88526–A, 90691–A, 92342–A, 90198–A, and 91575–A are dismissed.

The correct dutiable value found for the test case, reappraisement 88195–A, under the mandate of the statute, becomes the correct dutiable value in the duress cases, and the collector should liquidate accordingly. The appraised value found by the single justice in the test case for reappraisement 92342–A, which was 89412–A, was not appealed from. The final appraised value of the test case for this reappraisement was 4 cents per pound, and it follows that this entry must be liquidated at 4 cents per pound.

We will now proceed to decide the sole issue in this case, which is as to whether or not there is in the record substantial evidence supporting the finding of the United States Customs Court that the American selling price of the merchandise in the test case was 5 cents per pound.

It is conceded that the usual wholesale quantity of the merchandise is a carload lot which is approximately 20 tons.

John F. Wischhusen, a witness for the importers and manager of a firm of importers and manufacturers of chemicals, of New York, testified that he had purchased domestic sodium silicofluoride from the Baugh Chemical Co. in Baltimore in 1928 and 1929 under contract in the amount of 100 tons and in addition thereto made three separate purchases of one carload each; that the price paid in each instance was 4 cents per pound f. o. b. Baltimore; that he had bought from concerns other than the Baugh Chemical Co.; that he would say the Baugh Chemical Co. produces about 30 to 40 per centum of domestic silicofluoride; that an official of the Baugh company stated to him that they also sold to others, and he put in the record the names of three purchasers, two in Pennsylvania and one in New York, besides the company he represented; that his firm was a consumer of this product; that he also resold it; that he thought he could purchase more from the Baugh company than his contract called for, but that he hadn't because he didn't try to buy more; that he did not take the entire output of the Baugh Chemical Co. and did not buy from the companies who sold to or through one Sundheimer, since they refused to sell to him.

Arthur W. Wilkinson, the other witness for the importers, testified that he was a chemical manufacturer, of the firm of Sterling Products Co., eastern Pennsylvania; that he purchased a carload of sodium silicofluoride from the Baugh Chemical Co., a manufacturer of fertilizer, in October, 1928, at 4 cents per pound; that in November of that year he contracted with the Baugh company for 100 tons of the merchandise to be delivered during the first six months of 1929 at 4 cents per pound f. o. b. Baltimore; that the Baugh company didn't supply all his demands but that he didn't recall a case where he tried to buy from them and was unable to get it; that he didn't know without looking up the record whether or not he bought from any other domestic manufacturer during the period in controversy; that he purchased directly from the manufacturer and also through others. On redirect examination the witness stated that during the period referred to he didn't purchase from any of the other American manufacturers because he did not need any more than he had.

Henry Sundheimer, called as a witness for the Government, testified, among other things, that his office was in New York and that he was a distributor of chemical products manufactured in the United States; that he handled the output of some eight different companies "to market the goods in the United States"; that belonging to these different companies there was one plant in Chicago, one at Boston, two at Carteret, N. J., one at Baltimore, and one at Jacksonville, Fla.; that at one time he had handled the entire output of the Baugh plant; that he estimated they produced about 15 to 20 per centum of the output in the United States; that the eight plants he represented

made approximately 80 per centum of the entire output; that with the exception of the Armour Fertilizer Works he bought outright from the producers; that he fixed the price at which he sold the goods; that he took all the output of all these producers and by contract controlled their entire output; that in the case of the Armour Fertilizer Works he contracted with them on a commission basis, taking the whole output; that they arranged the price; that the American Agriculture & Chemical Co. and Armour produced about 50 per centum of all the American production. Later on he testified regarding the Armour people that the selection of customers, the price at which the goods were to be sold and all arrangements were left with him. He stated that the lowest price he paid one of the producers was 4½ cents per pound. He refused to state what he paid the other producers. The witness testified, in substance, that he had represented Armour on a commission basis for five or six years and that he had purchased nothing from them during that time. The witness testified that he sold Armour's product "at a price per pound as high as 5½ cents, and as low as 5¼ cents [generally f. o. b. manufacturing plant]; very little under that." *Sundheimer further stated that in making the prices he took into account the freight that is to be paid to the delivery points; that for short deliveries the selling price would be 5½ cents and for long deliveries 5 cents. In another part of his testimony witness stated that he sold for 10 cents a pound to a new industry;* that he did not sell any carload lots at less than 5 cents per pound. When asked the difference in price when he did sell less than a carload he replied: "I am selling at present at 6 to 7½ cents to laundries, and I have sold as low as 4½ cents to some dealers, to do him a favor, which has no bearing on the consuming trade. In fact, if somebody wants it very badly and needs it, I may give him a few barrels at 4 cents. But that has nothing to do with my regular trade policy or established practice." He stated that as a rule the price contemplates that the freight is paid by the purchaser but that there were some slight exceptions; that principally all the business is done f. o. b. factory; that "5 to 600 tons" constituted one sale. The witness stated that the principal market was "the manufacturing states of the Middle West, Pennsylvania, Ohio, Indiana, Illinois"; that "the Atlantic seaboard offers a market only for a certain use, principally as a laundry product"; that he consummated his sales principally in the Middle West of the United States. He declined to give the names of his customers.

It is the contention of the importers here that there is no substantial evidence supporting the decision of the court below, inasmuch as the purchases made by Sundheimer were purchased in controlled sales and that the sales made by him were controlled to an extent which precluded the sale price from being taken as a proper dutiable value

as defined under section 402, Tariff Act of 1922; that, since the sales to him and his sales to others may not be taken as evidence of the American selling price, the only evidence of selling price left in the record from which proper dutiable value may be determined is the 4 cents per pound selling price of the Baugh Chemical Co.

It would serve no useful purpose to go into a full and detailed discussion of all the reasons why the sales to Sundheimer and his sales to others were not such sales as are contemplated by subsection (f) of section 402. Certainly his sales at various prices, depending upon different quantities and trade conditions, can not be accepted as the American selling price. According to his testimony, he had various American selling prices, depending upon a number of different conditions, which result in such a controlling of the price and in such uncertainty as to a definite American selling price as to justify the appraising officials in rejecting such evidence as establishing American selling price. His goods were not freely offered to all at the same price. His testimony, therefore, amounts to no substantial evidence that the American selling price was 5 cents per pound.

It is the Government's position that the sales of the Baugh Chemical Co. were in quantities so small as compared to the entire sales in America (according to the Government's contention, 20 per centum, and the importers', 40 per centum) that the price of such sales can not be accepted as the American selling price and proper dutiable value, and especially is this true, it is contended, where 80 per centum of the American production was sold at a higher price.

At first blush it does seem to bring an anomalous result, in finding the dutiable value, to reject the sale price of the major portion of a commodity and to accept the sale price of a minor portion of the same. This apparent anomaly, however, disappears when consideration is given to the fact that the American selling price is definitely defined in the statute, and, as the major portion of the entire sales was made in a manner not in accordance with the statutory requirements, all of such sales must be disregarded, and that if any material portion of the entire sales was made in America in accordance with the provisions of the statute, these sales, regardless of the comparative quantity, must be accepted as the true standard of value. Indeed, it is probable that there are various kinds of goods made and sold in the United States which are never sold in accordance with the terms of the statute under consideration.

The record discloses that the Baugh Chemical Co. sold and freely offered to sell to all purchasers, in the usual wholesale quantities, the merchandise at bar at 4 cents per pound. The appellate division affirmatively found as follows:

* * * *   and so far as we can discover from the testimony he offered his produce freely to all purchasers in the usual wholesale quantities and in the ordinary course of trade.   [Italics ours.]

Some question has been raised as to the location of "the principal market of the United States" for the merchandise in controversy. Sundheimer, after locating the factories from which he sold in Chicago, Baltimore, Carteret, N. J., Boston, and Jacksonville, Fla., testified that the principal market for sodium silicofluoride, he would say, was the manufacturing states of the Middle West, Pennsylvania, Ohio, Indiana, and Illinois, and that the Atlantic seaboard offered a market only for a certain use, principally as a laundry product or a laundry compound; that most of this article is sold to purchasers in the Middle Western States, that is, the witness said, that there was where he consummated his sales. He also stated that the New York market was the poorest market in the United States on account of importations at that market and the lack of it being a manufacturing center for this character of goods. His office was in New York, and the only producer he would name and whose sale price he would state was Armour at Chicago.

The Baugh Chemical Co., according to the record, is located in Baltimore. Its sales, as shown in the record, are made to various purchasers, chiefly on the Atlantic seaboard—eastern Pennsylvania and New York. Sundheimer also sells from a plant in Baltimore and sells to consumers on the eastern seaboard. The query has been suggested, Is the principal market for this kind of merchandise where the goods are delivered, or where the goods are made and can be obtained? The principal market is certainly not shown by proof of sales not made in accordance with the provision of the statute. Sundheimer's testimony as to the principal market, is, obviously, based upon his own sales, which sales do not conform to the statutory requirements.

Our attention has been called to no other testimony in the record as to the principal market except that of Sundheimer, and we know of no other. The record also shows that from 20 to 40 per centum of the American-produced commodity is freely offered for sale in the usual wholesale quantities and in the usual course of trade, from a Baltimore plant to various consumers in Pennsylvania and in states other than the states referred to as the principal market by Sundheimer. It seems to us that the principal market where the sales were made in accordance with the provision of the statute, under this record, is at Baltimore.

We think, under these circumstances, the sales price of the Baugh Chemical Co., in the manner described in the testimony and in the findings of the court below, should be accepted as the American selling price, as defined in section 402, *supra*, and the proper dutiable value of the merchandise involved in the test case, to wit, reappraisement 88195–A, and that such final appraised value should be accepted as the dutiable value in the duress entries.

8

The judgment of the United States Customs Court is *reversed* and the cause remanded for further proceedings not inconsistent with the views herein expressed.

HATFIELD and LENROOT, JJ., concur in the conclusion.